IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

JUNIOR OATMAN,                      *
                                    *
        Plaintiff,                  *
                                    *
        v.                          *          CV 118-089
                                    *
AUGUSTA COLLECTION AGENCY,          *
INC.,                               *
                                    *
        Defendant.                  *

---

O R D E R

---

Before the Court is Defendant Augusta Collection Agency,
Inc.'s ("ACA") motion for summary judgment.  The Clerk of Court
gave Plaintiff notice of the motion for summary judgment and
informed him of the summary judgment rules, the right to file
affidavits or other materials in opposition, and the consequences
of default.  (Doc. 12.)  Thus, the notice requirements of Griffith
v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam),
are satisfied.  The time for filing materials in opposition has
expired, and the motion is ripe for consideration.


I.   Background

Plaintiff brought this case pursuant to the Fair Debt
Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 et seq., and
the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §§ 227

*et seq.* (Compl., Doc. 1, at 1.) Plaintiff alleges that Defendant violated Sections 1692c, 1692d and 1692e of the FDCPA as well as Section 227 (b)(1)(A)(iii)[1] of the TCPA. (<u>Id.</u> at 4-6.) The facts giving rise to this case are as follows.

Plaintiff incurred a debt of $2,196 to Gold Cross, Inc. ("Gold Cross") for emergency medical services provided to him. (Oatman Dep., Doc. 12-2, at 51:22-52:4.) Gold Cross engaged Defendant to collect the debt. (Def.'s Statement of Facts, Doc. 12-1, ¶ 2.) Plaintiff has not been sued on the debt. (Oatman Dep., at 25:19-21.)

Plaintiff provided his phone number to Defendant during his first call to Defendant on March 21, 2018. (Oatman Dep., at 65:5-16, 85:19-86:6; Decl. Robert A. Wylds Jr., Doc. 12-4, at 3 and ¶ 5.) During the call, Plaintiff also told Defendant that he believed his insurance would cover the debt; Plaintiff agreed with Defendant's agent that she should check with the insurance provider and Plaintiff's employer to see if the services were covered. (<u>Id.</u> at 75:1-75:20). They were not. (<u>Id.</u> at 76:2-76:10.)

During the call, Defendant's agent allegedly threatened Plaintiff with lawsuits and garnishment, threatened to contact a

---

[1] Count II of the Complaint cites section 227 (b)(1)(iii), which misses a capital-letter subsection designation. However, it is clear from Plaintiff's response to the motion for summary judgment and other arguments that Count II is brought under section 227 (b)(1)(A)(iii).

third party regarding the debt, and used profanity. (Id. at 86:1-87:1, 93:21-94:10, 95:8-16.) The specific instances of profanity include: that the agent "[didn't] give a damn" and that "[t]he shit is going to get resolved one way or another." (Id. at 98:12-14.)

After March 21, Plaintiff and Defendant exchanged calls a total of seven times: Defendant called Plaintiff on March 23, 26, 27, and 28, and Plaintiff called Defendant three times on March 27. (Id. at 85:1-11.) When Defendant initiated the calls, Plaintiff heard a "robot-type sound" and not a live person. (Id. at 87:16-22.) During the March 28th call, Plaintiff told Defendant not to call him again. (Id. at 79:2-8; Decl. Robert A. Wylds Jr., ¶ 7.) Plaintiff claims that Defendant called him after he revoked his consent, but it is clear that Plaintiff called Defendant several times after March 28 to inquire about his debt. (Oatman Dep., at 80:12-14, 82:17-25; Decl. Robert A. Wylds Jr., ¶ 8.)

## II. Procedural Arguments

Before addressing the merits of the motion, the Court considers the Parties' procedural arguments. Plaintiff argues that Defendant waived its affirmative defense of consent because it was not pled in the Answer as required by Federal Rule of Civil

3

Procedure 8(c). This argument fails. Defendant did plead consent in its seventh defense. (Answer, Doc. 5, at 2.)

Next, Defendant argues that Plaintiff's failure to file a separate statement of facts requires the Court to deem Defendant's account of the facts admitted under Local Rule 56.1. This argument fails too. In support of its argument, Defendant cites two cases: Bank of Ozarks v. Kingsland Hosp., LLC, No. 4:11-cv-237, 2012 WL 5928642, at *4 (S.D. Ga. Oct. 5, 2012), and Garmley v. Cochran, 651 F. App'x 933, 937 (11th Cir. 2016). While the court in Garmley upheld the district court's decision to deem uncontested facts admitted, it did so under the Northern District of Georgia's local rules. Garmley, 651 F. App'x at 937.

As the court in Bank of Ozarks highlights, those local rules are more exacting than the local rules of this Court. Bank of Ozarks, 2012 WL 5928642, at *5 ("Whereas the Northern District's [Local Rule] 56.1 explicitly requires summary judgment respondents to file a responsive brief *and* an individually numbered response to the movant's [statement of facts], the Southern District of Georgia's [Local Rule] 56.1 only requires the [statement of facts] be 'controverted by a statement served by the opposing party.'"). That court then considered the nonmoving party's reply brief and the evidence it cited, to the extent it complied with Local Rule 56.1. Id.; see also id. at *5 n.3 ("Although a response brief

alone can satisfy the requirements of [Local Rule] 56.1, the purpose of [Local Rule] 56.1 leaves the Court in this case wanting something better capable of focusing the Court's attention on what is, and what is not, genuinely controverted." (internal quotation and punctuation omitted)). Accordingly, the Court considers Plaintiff's response brief – which contains a section titled "Statement of Facts" and citations to Plaintiff's deposition throughout - and the evidence it cites insofar as it conforms with Local Rule 56.1.


## III. Legal Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Facts are "material" if they could "affect the outcome of the suit under the governing [substantive] law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and a dispute is genuine "if the nonmoving party has produced evidence such that a reasonable factfinder could return a verdict in its favor." Waddell v. Valley Forge Dental Assocs., Inc., 276 F.3d 1275, 1279 (11th Cir. 2001). Inferences drawn from the facts must be in the light most favorable to the nonmoving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and the Court should "resolve all

reasonable doubts about the facts in favor of the non-movant."
United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1437
(11th Cir. 1991) (en banc) (citation, internal quotation marks,
and internal punctuation omitted). The Court should not weigh the
evidence or determine credibility. Anderson, 477 U.S. at 255.

The moving party has the initial burden of showing the Court
the basis for its motion by reference to materials in the record.
Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Because the
standard for summary judgment mirrors that of a directed verdict,
the initial burden of proof required by either party depends on
who carries the burden of proof at trial. Id. at 322-23. When
the movant does not bear the burden of proof at trial, it may carry
the initial burden in one of two ways — by negating an essential
element of the nonmovant's case or by showing that there is no
evidence to prove a fact necessary to the nonmovant's case. See
Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-08 (11th Cir. 1991)
(citing Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970); Celotex
Corp., 477 U.S. 317). The movant can never satisfy its initial
burden by merely declaring that the nonmoving party cannot meet
its burden at trial. Id. at 608.

If the movant carries its initial burden, the nonmovant must
"demonstrate that there is indeed a material issue of fact that
precludes summary judgment." Id. When the nonmovant bears the
burden of proof at trial, the nonmovant must tailor its response

6

to the method by which the movant carries its initial burden. For example, if the movant presents evidence negating a material fact, the non-movant "must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated." Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1116 (11th Cir. 1993). On the other hand, if the movant shows an absence of evidence on a material fact, the nonmovant must either show that the record contains evidence that was "overlooked or ignored" by the movant or "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. at 1116—17. The nonmovant cannot carry its burden by relying on conclusory allegations contained in the pleadings. See Morris v. Ross, 663 F.2d 1032, 1033—34 (11th Cir. 1981). Rather, the nonmovant must respond with affidavits or as otherwise provided by Federal Rule of Civil Procedure 56. In reaching its conclusions herein, the Court has evaluated the Parties' briefs, other submissions, and the evidentiary record in this case.

## IV. Discussion

A. TCPA Claim

Defendant first seeks summary judgment as to Plaintiff's TCPA claim under 47 U.S.C. 227(b). Section 227(b)(3) provides a private

right of action for damages and/or injunctive relief for violations of the Section, and statutory damages of $500 per violation if Plaintiff's actual monetary loss is less than $500.[2]  Plaintiff alleges that Defendant contacted him in violation of Section 227(b)(1)(A)(iii), which prohibits calls to cellular phones dialed from an "automatic telephone system" or using "an artificial prerecorded voice" without the consent of the receiving party.

Defendant argues that Plaintiff consented to receiving such calls when he provided Defendant with his phone number.  This is an accurate statement of the law.  "[P]ersons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary."  Murphy v. DCI Biologicals Orlando, LLC, 797 F.3d 1302, 1305 (11th Cir. 2015) (quoting In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 7 F.C.C. Rcd. 8752, 8769 (1992) (implementing the TCPA)).  So, Plaintiff cannot recover for the calls he received after providing Defendant with his phone number but before he revoked his consent to be called on March 28, 2018.

---

[2] Although 47 U.S.C. § 227(b)(3) states that actions may be brought in a state court, the United States Supreme Court held that federal courts have jurisdiction over private TCPA actions. Mims v. Arrow Fin. Servs., LLC, 565 U.S. 368, 376 (2012) ("We now hold that Congress did not deprive federal courts of federal-question jurisdiction over private TCPA suits.").

Stated differently, because Plaintiff initiated contact with Defendant, the only way Plaintiff could recover under Section 227(b)(1)(A)(iii) is if Defendant called him after he told Defendant's agent to stop calling him. Defendant presented undisputed evidence that: (1) Plaintiff placed the first call to Defendant (Def.'s Statement of Facts, ¶ 6); (2) on that call, Plaintiff provided his phone number to Defendant (id. ¶ 10); and (3) that once Plaintiff revoked his consent to receive calls, Defendant did not call him again (id. ¶¶ 24-28). Thus, the burden shifts to Plaintiff to "demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark, 929 F.2d at 608.

Plaintiff's response to the motion makes no citation to the record or argument that Defendant called Plaintiff after March 28, instead focusing on the ill-fated failure-to-plead argument which the Court dispatched above. Plaintiff does argue that the calls always seemed to be automated, but that does not refute the evidence showing that Defendant never called Plaintiff after he revoked his consent. While Section 227(b)(1)(A) prohibits artificial voices, it does so only when the call is made without the prior consent of the recipient. Plaintiff provides no evidence that he was called after he withdrew his consent. Because Plaintiff has failed to "respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact

sought to be negated," summary judgment for Defendant is proper as to Plaintiff's TCPA claim.  See Fitzpatrick, 2 F.3d at 1116.

B. FDCPA Claims

Defendant also moves for summary judgment on Plaintiff's FDCPA claims under 15 U.S.C. §§ 1692c, 1692d, and 1692e.

1. 15 U.S.C. § 1692c

Count I of the complaint asserts a claim under this Section, which prohibits debt collectors from communicating with most third parties about the debt unless the debtor consents.  15 U.S.C. § 1692c(b).  Defendant argues that Plaintiff consented to having it contact Plaintiff's employer and insurance provider and has cited evidence that Plaintiff gave such consent.  (See Oatman Dep., at 75:11-20.)  Although Plaintiff provides no argument on the issue, he points out that Defendant "call[ed] my employer not only to verify my insurance, but to garnish my wages through my paycheck." (Id. at 95:12-14.)  Such a call would exceed the scope of Plaintiff's consent.  Plaintiff has demonstrated a dispute of material fact as to this issue, and therefore summary judgment for the Section 1692c claim is not appropriate.

2. 15 U.S.C. § 1692d

Count I also asserts claims under this Section, which states:

A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a

10

> debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . . (2) The use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader.

15 U.S.C. § 1692d(2). Claims under this section are considered "from the perspective of a consumer whose circumstances make[] him relatively more susceptible to harassment, oppression, or abuse." Jeter v. Credit Bureau, Inc., 760 F.2d 1168, 1179 (11th Cir. 1985).

In addition to profanity, Plaintiff argues that threats of garnishment violate the general provision of Section 1692d. As to profanity, Section 1692d(2) "was meant to deter offensive language which is at least akin to profanity or obscenity. Such offensive language might encompass name calling, racial or ethnic slurs, and other derogatory remarks which are similar in their offensiveness." Id. at 1178.

Comparing the two instances of profanity Defendant used in this case to those that were found to have violated Section 1692d(2), it is clear that Defendant's statements do not sink to the level of abuse the statute prohibits. See Kelemen v. Prof'l Collection Sys., No. 6:09-cv-1639-Orl-28DAB, 2011 WL 31396, at *3 (M.D. Fla. Jan. 2, 2011) ("However, language that is merely 'rude and unpleasant' does not violate the FDCPA.") (citation omitted). Here, Defendant's agent said, "I don't give a damn" and "[t]he shit is going to get resolved one way or another." (Oatman Dep., at 98:11-14.) This language is close to the language in Kelemen,

11

which found that "pay your damn bills" did not violate Section 1692d(2). <u>Kelemen</u>, 2011 WL 31396, at *3. Examples of language violating Section 1692d(2) include "god-damn liar," "low-down son of a bitch," and "tell Amanda to quit being such a fucking bitch." <u>United States v. Cent. Adjustment Bureau, Inc.</u>, 667 F. Supp. 370, 376 (N.D. Tex. 1986; <u>Horkey v. J.V.D.B. & Assocs., Inc.</u>, 179 F. Supp. 2d 861, 868 (N.D. Ill. 2002).

After comparing these statements from other cases to those in this case, and noting that the statements are not directed at the Plaintiff like the statements found to have violated the Section, the Court concludes as a matter of law that the statements do not violate Section 1692d(2).

The Court now turns to the claim that Defendant threatened to garnish Plaintiff's wages in violation of the general part of Section 1692d, the argument being that a threat to garnish debtor's wages is harassing, oppressive, or abusive. A debt collector threatening legal action – although possibly embarrassing - is not inherently violative of Section 1692d. <u>See</u> <u>Jeter</u>, 760 F.2d at 1179; <u>Miljkovic v. Shafritz & Dinkin, P.A.</u>, 791 F.3d 1291, 1305 (11th Cir. 2015). The question is whether the conduct reflects a "tone of intimidation." <u>Jeter</u>, 760 F.2d at 1179; <u>Miljkovic</u>, 791 F.3d at 1305.

"Ordinarily, whether conduct harasses, oppresses, or abuses will be a question for the jury." <u>Jeter</u>, 760 F.3d at 1179. At

his deposition, Plaintiff averred that the Defendant threatened to contact his employer to garnish his wages. (Oatman Dep., at 86:7-87:1; 93:21-94:10; 95:8-16).) Construing the evidence in the light most favorable to Plaintiff as the nonmovant, and noting that the question of whether conduct harasses, oppresses, or abuses is normally a question for the jury, the Court denies Defendant's motion as to whether the threats of garnishment violated Section 1692d. See Jeter, 760 F.3d at 1179 (stating that Section 1692d conduct analysis is ordinarily for the jury); Shuler, 441 F. App'x at 716-17 (stating that the summary judgment standard requires district courts to construe evidence in the light most favorable to the nonmoving party).

### 3. 15 U.S.C. § 1692e

Finally, Count I of the Complaint asserts a claim under Section 1692e for Defendant's alleged use of false representations and deceit to collect the debt. One of the applicable subsections, subsection (4), prohibits "[t]he representation or implication that nonpayment of any debt will result in . . . garnishment, . . . unless such action is lawful and the debt collector . . . intends to take such action." 15 U.S.C. § 1692e(4). Similarly, subsection (5) prohibits "[t]he threat to take any action that cannot legally be taken or that is not intended to be

taken." The question of intent is common to both subsections and is at issue in this case.

Defendant first argues that Plaintiff fails to allege facts to state a claim under Section 1692e. This argument fails: Plaintiff alleged a violation of Section 1692e, that Defendant threatened to file suit and garnish his paycheck, and that Defendant used false representations in an attempt to collect the debt. (See Compl., at ¶¶ 12-14, 23-24.)

Defendant also argues that the mere threat of garnishment does not violate the FDCPA, and that invoking the remedies available to debt collectors, including garnishment, is permissible. Defendant bases its argument on Miljkovic, where the Eleventh Circuit ruled that using legal remedies to collect a debt does not violate Section 1692e. However, Section 1692e differentiates between threatening to employ such a remedy and actually doing so. This is evident from the language "unless such action is lawful and the debt collector . . . intends to take such action." 15 U.S.C. § 1692e(4); compare Jeter, 760 F.2d at 1175-76 (ruling that the issue of whether debt collector intended to file suit after sending a letter saying it would file suit if debtor did not pay within certain time should have been tried to a jury), with Miljkovic, 791 F.3d at 1307 ("If judicial proceedings are to accurately resolve disputes, . . . debt-collector attorneys must be permitted to . . . invoke the remedies available to them,

14

including wage garnishment.") (citing <u>Heintz v. Jenkins</u>, 514 U.S. 291, 296 (1995) ("[The Act allows] the actual invocation of the remedy that the collector 'intends to invoke.'")).

The only evidence before the Court regarding Defendant's alleged garnishment threats is in Plaintiff's deposition. (Oatman Dep., at 86:7-87:1; 93:21-94:20; 95:8-16.) In the deposition, Plaintiff stated multiple times that Defendant threatened to garnish his wages. (See <u>id.</u>) Defendant has not presented any evidence that it either did not make the threats, or if it did, that it intended to carry out its garnishment efforts. Plaintiff also notes that he has never been sued by anyone regarding the debt, lending support to his argument that Defendant did not intend to take the legal action it threatened. (See Oatman Dep., at 25:19-21.) Thus, there exists a genuine dispute as to whether Defendant intended to take the legal actions it threatened. Accordingly, summary judgment as to Plaintiff's Section 1692e claim is denied.

### V. Conclusion

Upon the foregoing, Defendant's motion for summary judgment (doc. 12) is **GRANTED IN PART** and **DENIED IN PART**. Defendant's motion is granted as to Plaintiff's claims under 47 U.S.C. § 227 of the TCPA. Plaintiff's claims under Sections 1692c, 1692d, and 1962e of the FDCPA, as more

15

specifically discussed above, shall proceed to trial in due course.

　　ORDER ENTERED at Augusta, Georgia this 11th day of December, 2019.

_____
J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA
